## Dodge *v.* McClintock.

In a written agreement, not under seal, between P. & A., the former agreed that A. should have leave to cut timber and wood on his land, and the latter agreed that P. should have leave to flow his lands by a dam to a certain extent.  *Held,* that though the licenses in this case may have been mutual, so far as that one may have been given in consideration of the other, yet that they were independent, and that either party may revoke his license, so far as it remains unexecuted, at his option, whether the other party revokes his or not.

TRESPASS for breaking and entering the plaintiff's close in Windsor, on divers days, between Dec. 1, 1863, and the date of the writ, February 3, 1866, and cutting and carrying away wood and timber.

The defendant pleaded the general issue with a brief statement setting up a license to enter and cut the wood and timber, and also a right by prescription for the owners of the defendant's farm to enter upon the *locus in quo,* cut, and carry away such wood and timber of every kind standing, and being on said close, as should be necessary for fuel and timber, every year, and at all times of the year, as to such owners should seem proper as appertaining and belonging to the defendant's said messuage.

At the trial the plaintiff proved his title, and the entry, and cutting and carrying away of wood and timber; and thereupon the defendant introduced an agreement between Samuel Preston, Junior, and Stephen W. Atwood, of which the following is a copy :

Articles of agreement made and concluded the fourth day of March, A. D. 1813, by and between Samuel Preston, Jr., and Stephen W. Atwood, both of Windsor, in the county of Hillsborough, and State of New Hampshire, husbandmen : I, the said Samuel Preston, Jr., do give the said Stephen W. Atwood leave to cut timber or wood of any kind, on my land, on the north side of the brook leading from Carter's to Black pond, so called, at any time hereafter, and I, the said Stephen,

do give the said Samuel leave to flow the land that his mills now flow my land at high water.

Attest,                                (Signed,)
ELIZABETH MORRISON,                    SAMUEL PRESTON, JR.
LYDIA PRESTON.                         STEPHEN W. ATWOOD.

It appeared that the estate of the said Preston had been transmitted to the plaintiff and was now held by him, and that the defendant held the estate of the said Atwood.

The defendant offered to prove that, at or about the time the plaintiff acquired his title, which was Dec. 30, 1863, he had notice of the aforesaid agreement, and that with said notice, he continued to flow the defendant's land, under said agreement, down to the beginning of this suit; but it appearing that plaintiff prohibited the entry and cutting of any more wood or timber on his land by the defendant, the court ruled that such prohibition was a revocation of the license under said agreement, and that plaintiff would still be entitled to recover for subsequent entries and cutting of wood and timber, notwithstanding he continued to flow the defendant's land, to which ruling the defendant excepted. The defendant also offered to prove that ever since the making of said agreement, the defendant, and those under whom he claimed, had always under said agreement claimed and exercised the right to enter upon the plaintiff's said close, and cut and carry away wood and timber in the manner set forth in his brief statement, but the court ruled for the purposes of this trial that such evidence would not be a good defence to the suit, to which the defendant excepted.

Thereupon a verdict was directed for the plaintiff for damages fixed by the agreement of the parties at $40, subject to the opinion of the whole court.

The questions of law arising upon the case were reserved for the determination of the whole court.

*Tappan & Sanborn*, for defendant, cited and commented on *Sampson* v. *Burnside*, 13 N. H. 264; *Woodbury* v. *Parshley*, 7 N. H. 237; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 102; *Winter* v. *Brockwell*, 8 East 308; *Harris* v. *Gillingham*, 6 N. H. 9; Bouv. Law Dic. License 2 & 3; *Wallace* v. *Fletcher*, 30 N. H. 434; *Watkins* v. *Peck*, 13 N. H. 360; 2 Black. Com. 226, note 4.

*Briggs & Teele*, for plaintiff, cited and commented on *Jones* v. *Barclay*, Doug. 690; Parsons on Con. 528, sec. 7; 3 Kent's Com. 42; *Harris* v. *Gillingham*, 6 N. H. 9; *Pease* v. *Gibson*, 6 Greenl. 81; *Carleton* v. *Redington*, 21 N. H. 291; *Cowles* v. *Kidder*, 24 N. H. 364; *Ruggles* v. *Lesure*, 24 Pick. 187; *Stevens* v. *Stevens*, 11 Met. 251; *Cheever* v. *Pearsons*, 16 Pick. 273; *Burton* v. *Scheoff*, 1 Allen 134; *Thomas* v. *Powell*, Vaughn 330; *Foot* v. *Company*, 23 Conn. 220; *Cook* v. *Stevens*, 11 Mass. 533; *Munford* v. *Whiting*, 15 Wend. 380; *Morse* v. *Copeland*, 2 Gray 304; *Foster* v. *Browning*, 4 R. I. 47; *Dyer* v. *Sanford*, 9 Met. 393; *Prince* v. *Case*, 10 Conn.

378; *Wood* v. *Ledbitter*, 13 M. & W. 845; *Webb* v. *Paternoster*, Palm. 71; 2 Stark. Ev. 598; *Crosby* v. *Wadsworth*, 6 East. 602; *Reed* v. *Merrifield*, 10 Met. 160; *Claflin* v. *Carpenter*, 4 Met. 580; *Tyler* v. *Hammond*, 11 Pick. 193; *Olmstead* v. *Mills*, 7 N. H. 522; *Jones* v. *Purcell*, 5 Pick. 486; *Fenis* v. *Brown*, 3 Barb. 108; 2 Black. Com. 35; *Thomas* v. *Mansfield*, 13 Pick. 248; *First Parish* v. *Pratt*, 4 Pick. 226; *Batchelder* v. *Wakefield*, 8 Cush. 243; *Arnold* v. *Stevens*, 24 Pick. 110; *Keene* v. *Dearborn*, 8 East. 263; *Tickle* v. *Brown*, 4 A. & E. 383; Gale on Easements 142–3 152, note *a*; *Parker* v. *Foote*, 19 Wend. 319.

SARGENT, J.   It is evident that neither party intended to convey any interest in real estate by the agreement between Preston and Atwood. No interest in land is described; no standing wood or timber is attempted to be conveyed. The one gives to the other leave or license to do certain acts, to cut timber and wood on his land, and the other gives the first leave to flow as much of his land as his mills now flow at high water.

Upon the authority of *Carleton* v. *Redington*, 21 N. H. 305–6, and cases cited, the question might have been raised, whether these licenses on each side were assignable, and whether both were not determined and ended when the original parties to the contract sold and conveyed their several premises. But the case finds that there was an actual revocation by the plaintiff of the license to defendant to cut wood and timber on his land, before the acts here complained of. But it is claimed here that this revocation could not be effectual, until the plaintiff should cease to flow the defendant's land; that these licenses were mutual and dependent one upon the other, in the nature of conditions precedent, so that neither could revoke the license given to the other, so long as he enjoyed the benefit of the license given to him.

This leads us to examine the nature of the licenses given in this case. These licenses were evidently mutual in one sense, that is, each was given in consideration of the other. But they may be mutual to that extent without being dependent. Because one was granted in consideration of the other, it by no means necessarily follows that the privilege of enjoying the one after it was given, was to depend upon the fact, as a condition precedent, that the other was enjoyed.

In *Jones* v. *Barclay*, Doug. sec. 659, Le Blank for the plaintiffs, in his argument, cited the case of *Kingston* v. *Preston*, determined in E. 13 Geo. 3, in which *Lord Mansfield*, delivering the judgment of the court, said : "There are three kinds of covenants :

1.   Such as are called mutual and independent, where either party may recover damages from the other, for the injury he may have received by a breach of the covenants in his favor, and where it is no excuse for the defendant to allege a breach of the covenants on the part of the plaintiff.

2.   There are covenants which are conditions and dependent, in which the performance of one depends on the prior performance of another,

and therefore till this prior condition is performed, the other party is not liable on his covenant.

3. There is also a third sort of covenants which are mutual conditions to be performed at the same time ; and in these, if one party was ready and offered to perform his part, and the other neglected or refused to perform his, he who was ready and offered, has fulfilled his engagement and may maintain an action for the default of the other, though it is not certain that either is obliged to do the first act."

But he adds, that the dependence or independence of the covenants, was to be collected from the evident sense and the meaning of the parties.

This subject of dependent and independent covenants and contracts is fully considered in *Perdage* v. *Cole*, 1 Saund. 319, in note 4, by *Seryt. Williams*, and numerous authorities cited. So Parsons, in his work on Contracts, 4th Ed. vol. 2, p. 40, says, that by the very definition of them, if covenants or agreements are dependent, that is, if each depends upon the other, the failure of one destroys and amends the other. But he adds, "they may be wholly independent, although relating to the same subject, and made by the same parties, and included in the same instrument. In that case they are two separate contracts. Each party must then perform what he undertakes, without reference to the discharge of his obligations by the other party ; and each party may have his action against the other for the non-performance of his agreement, whether he has performed his own or not."

In the case before us, it seems evident, that, though these contracts were mutual, so far as that one was the consideration of the other, yet they were not mutual in the sense that one was to be considered as a condition precedent to the other ; one is not to depend upon the other ; one is not to have leave to cut wood as long as the other is allowed to flow land, or on condition that he is thus allowed to flow land, and *vice versa*. There is no dependence of the one contract upon the other, no condition precedent to be performed on either side.

These licenses fall, as we think, clearly within *Lord Mansfield's* first division of covenants or contracts, mutual to a certain extent, but yet independent of each other. It follows, therefore, that in such cases either party may not only have his action for a breach of the contract in his favor, without regard to his performance of his contract to the other party, but that either party in a case like this may revoke his license at his option, whether the other party revokes his or not, provided the license is on other grounds revocable.

But it is claimed that the license in this case cannot be revoked, until the party revoking abandons the use of the other party's land. But as we hold the licenses to be entirely independent of each other, this position is not tenable.

We had occasion to consider this question in *Houston* v. *Laffee*, 46 N. H. 505, and to examine the authorities, and we there came to the conclusion that a parol license to do a certain act or series or succession of acts on the land of another, is in all cases revocable, so far as it remains unexecuted, or so far as any future enjoyment of the easement is

concerned, at the will of the licensor, even where the licensee has made an expenditure of money upon the land of the licensor upon the faith of such license.

Nor do we think that the acts of the plaintiff were competent, as tending to show any license, either express or implied, in the face of his direct prohibition, which was as explicit a revocation of his license as he could well make. The evidence offered by defendant was also incompetent to show a prescription. To give any right by prescription, the possession or occupancy must not only have been uninterrupted and peaceable, but adverse. The fact that the defendant had claimed and exercised the right to enter upon said land, &c., under this agreement, was a claim not adverse, but in subordination to the plaintiff's title, and under the plaintiff's license. An adverse possession could only commence when the plaintiff revoked his license.

*Judgment on the verdict.*